IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAMELA SAMUDOSKY, JOHN SAMUDOSKY,

Plaintiffs,

v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, and ALLSTATE INSURANCE COMPANY,

Defendants.

2:23-CV-00827-CCW

**OPINION AND ORDER**

Before the Court are Plaintiffs' Motion to Remand and Defendants' Motion to Dismiss Plaintiffs' Complaint. For the reasons set forth below, the Court will **DENY** Plaintiffs' Motion to Remand and **GRANT** Defendants' Motion to Dismiss.

## I. Procedural Background

On April 5, 2023, Plaintiffs John Samudosky and Pamela Samudosky[1] filed a complaint in the Court of Common Pleas of Allegheny County[2] against Defendants Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Insurance Company (collectively "Allstate"). ECF No. 1 ¶ 1. The Samudoskys are citizens of Pennsylvania. ECF No. 1-2 ¶ 2. Allstate is a group of corporations, all of which are organized

[1] Gregory W. Smith and Patricia A. Smith were originally Plaintiffs in the case, but were voluntarily dismissed by the parties. *See* ECF No. 27.
[2] Captioned *Gregory W. Smith*, *et al. v. Allstate Property and Casualty Insurance Company, et al.*, No. GD-23-004532.

under the laws of the State of Illinois with their headquarters located in the same state. ECF Nos. 1-2 ¶¶ 3–7, 3 at 1.

This dispute arises from Allstate's practice of applying a "non-stacked" label to the declarations pages of single-vehicle insurance policies for Uninsured Motorist and Underinsured Motorist ("UM/UIM") coverage. ECF No. 1-2 ¶¶ 47–49. Under Pennsylvania law, insureds can increase the amount of their UM/UIM benefits by combining, or "stacking," the insurance limits for each vehicle under one or more policies. 75 Pa. C. S. § 1738(a). There are two types of stacking: intra-policy stacking and inter-policy stacking. Intra-policy stacking allows insureds to stack the limits of UM/UIM coverage of multiple vehicles on one policy. Inter-policy stacking allows insureds to stack the UM/UIM coverage of multiple vehicles across different policies. Insureds can waive their right to stacking by signing a waiver-of-stacking form.

The Samudoskys purchased two insurance policies from Allstate. ECF No. 1-2 ¶¶ 37–38. The first policy insures two private passenger automobiles and carries UM/UIM coverage of $250,000 per person/$500,000 per accident.[3] ECF No. 1-2 ¶ 38, 1-2 at 56. The second policy insures one motorcycle and carries UM/UIM coverage of $250,000 per person/$500,000 per accident. ECF No. 1-2 ¶ 37, 1-2 at 54. The Samudoskys have not signed a waiver-of-stacking form. ECF No. 1-2 ¶ 43.

Both parties agree that the Samudoskys cannot engage in intra-policy stacking for the motorcycle policy.[4] ECF Nos. 1-2 ¶¶ 53–54, 8 at 9. Allstate has therefore designated the UM/UIM coverage for this policy as "non-stacked." ECF No. 1-2 at 54. The Samudoskys challenge this

---

[3] Under this policy, both parties agree that Plaintiffs may engage in intra-policy stacking by combining the UM/UIM coverage for the two vehicles on the policy. Allstate has designated the UM/UIM coverage for this policy as "stacked." Plaintiffs do not dispute this designation.

[4] Single-item insurance policies cannot have intra-stacking benefits because there is only one vehicle and nothing else within the policy on which to stack. Because there is only one vehicle—the motorcycle—on this policy, the parties agree that there can be no intra-policy stacking.

designation as "improper, incorrect and unlawful" because, while they cannot stack within this policy, they may still engage in inter-policy stacking and combine UM/UIM coverage across their two separate policies. ECF No. 1-2 ¶ 55.

On September 28, 2022, an attorney for the Samudoskys sent a letter to Allstate, asking them to remove the "unstacked" designation from the motorcycle policy claiming it was "misleading and deceptive." ECF No. 1-2 at 46. On November 11, 2022, counsel for Allstate responded explaining that the "non-stacked" designation is used for single-item insurance policies to reflect that intra-policy stacking is unavailable. ECF No. 1-2 at 50. Allstate contends that the declarations page of insurance policies, where these "non-stacked" designations appear, are intended to reflect the contents of a single insurance policy—not how multiple insurance policies interact with each other. *Id.* Allstate further affirmed in its November 11 letter that, if the Samudoskys' insurance policies and Pennsylvania law remain the same, "Allstate will afford [Plaintiffs] inter-policy UM/UIM stacking across their auto and motorcycle policies if they are in an accident for which UM/UIM coverage is triggered." *Id.* To date, the Samudoskys have not been in an accident that triggered UM/UIM coverage, they have not claimed UM/UIM insurance benefits, nor have they been denied such benefits. *See generally* ECF No. 1-2.

The Samudoskys' Complaint appears to assert one claim, for "fraud and deceit" by Allstate, and they seek the following declaratory and injunctive relief: (1) a declaratory judgment that it is "improper, incorrect and unlawful" for Allstate to put a "non-stacked" designation on single-item insurance policies where no waiver-of-stacking form has been signed, and (2) a preliminary injunction enjoining Allstate from continuing to label such policies as "non-stacked." ECF No. 1-2 ¶¶ 52–64, 1-2 at 28.

On May 16, 2023, Allstate removed the case to this Court pursuant to 28 U.S.C. § 1446(a) based on diversity jurisdiction. ECF No. 1 at 1. Following removal, on May 23, 2023, Allstate filed a Motion to Dismiss the Samudoskys' Complaint for lack of subject-matter jurisdiction and for failure to state a claim. ECF No. 7. On June 2, 2023, the Samudoskys filed a Motion to Remand the case to state court. ECF No. 16. The Court will address both the Samudoskys' Motion to Remand and Allstate's Motion to Dismiss below.

## II. Legal Standard

### A. Motion to Remand

A district court should grant a motion to remand "any time before final judgment," where "it appears that the district court lacks subject matter jurisdiction." 28 U.S.C § 1447(c). Jurisdiction is evaluated "according to the plaintiff's pleading at the time of the petition for removal." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). District courts should strictly construe removal statutes and resolve all doubts in favor of remand. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Defendants have the burden of establishing removal jurisdiction. *See, e.g.*, *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005).

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

Under Rule 12(b)(1), a challenge to subject matter jurisdiction may be "either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "contests the sufficiency of the pleadings," while a factual attack "concerns the actual failure of a plaintiff's claims to comport factually with jurisdictional prerequisites." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A facial challenge contests subject matter jurisdiction without contesting the facts alleged in the complaint. *Davis*, 824 F.3d at 346. Importantly, "[i]n reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents

referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Const. Party*, 757 F.3d at 358. Here, because Allstate does not contest the facts alleged in the Samudoskys' Complaint, notably the existence of the UM/UIM insurance coverage and the availability of inter-policy stacking, Allstate's Motion to Dismiss is a facial attack and the Court will consider the Complaint and documents referenced therein and attached thereto, in the light most favorable to the Samudoskys.

## III. Legal Analysis

The Samudoskys assert that the case must be remanded to state court because Allstate cannot meet the amount-in-controversy requirement for diversity jurisdiction. ECF No. 16 ¶ 19. Alternatively, the Samudoskys ask the Court to exercise discretion to remand because the case only involves state-law issues. ECF Nos. 16 ¶ 20, 18 at 8. Allstate responds that the relevant insurance policy limits satisfy the amount-in-controversy requirement, and that discretionary remand is not warranted. ECF No. 23 at 4, 11–13. Allstate, however, contends that the case must be dismissed for lack of subject-matter jurisdiction because the Samudoskys do not have standing to sue as they have not shown an injury-in-fact. ECF No. 8 at 12–14. The Court agrees with Allstate that the requirements for diversity jurisdiction are met, that remand is not appropriate, and that the Samudoskys lack standing to sue.

### A. Diversity Jurisdiction Exists and Remand is not Appropriate

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). One such basis for removal is diversity jurisdiction. 28 U.S.C. § 1446(a). Diversity jurisdiction exists in cases between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

Here, the parties agree that there is complete diversity of citizenship. ECF Nos. 1-2 ¶¶ 2–7; 18 at 7. The Samudoskys contend, however, that the amount-in-controversy requirement is not satisfied because "money is not in controversy." ECF No. 18 at 7. Because the Samudoskys seek declaratory and injunctive relief, the Court will look to the "value of the object of the litigation." *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977). Here, the object of the litigation is the UM/UIM insurance coverage, which totals $250,000 per person/$500,000 per accident for the two private passenger automobile policy and $250,000 per person/$500,000 per accident for the one motorcycle policy—stacked together, the policies would total well above $75,000. Therefore, the amount-in-controversy requirement is satisfied, and this Court has diversity jurisdiction over the matter.

In the alternative, the Samudoskys argue that even if the Court has diversity jurisdiction, it should exercise its discretion to remand the case under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). They assert that, because state-law issues predominate, state courts are the appropriate forum to resolve such issues. The Court, however, will exercise its discretion under the Declaratory Judgment Act to retain jurisdiction. Under the DJA, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Therefore, district courts have "discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). A court's decision to grant or decline jurisdiction is reviewed for abuse of discretion. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 138 (3d Cir. 2014).

The United States Court of Appeals for the Third Circuit held that "considerations of practicality and wise judicial administration" govern this analysis. *Reifer*, 751 F.3d at 139 (quoting *Wilton*, 515 U.S. at 288). Therefore, district courts must meaningfully consider a non-exhaustive list of eight factors when determining whether to exercise DJA jurisdiction. *Reifer*, 751 F.3d at 146. These factors include:

(1) The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy,

(2) The convenience of the parties,

(3) The public interest in settlement of the uncertainty of obligation,

(4) The availability and relative convenience of other remedies,

(5) A general policy of restraint when the same issues are pending in a state court,

(6) Avoidance of duplicative litigation,

(7) Prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*, and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* The Third Circuit has further emphasized that "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction…" *Id.* at 144. But the presence of close or unsettled questions of state law suggests courts should be hesitant in exercising jurisdiction. *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000). Here, the absence of pending parallel litigation "militates significantly in favor" of the Court exercising

jurisdiction. ECF Nos. 23 at 12, 24 at 8. The remaining *Reifer* factors are either neutral or weigh in favor of exercising jurisdiction.

The first factor weighs slightly in favor of jurisdiction because the Court's decision will resolve the parties' dispute. The third factor also weighs slightly in favor of jurisdiction because there is no novel state-law issue at stake nor is there an actual case or controversy present. The parties' dispute does not implicate close or unsettled areas of Pennsylvania state law—both parties agree that the Samudoskys are legally entitled to inter-policy stacking of their UM/UIM benefits. ECF No. 1-2 at 50. Instead, the dispute centers around how Allstate labels its UM/UIM benefits in insurance contracts. *See Conroy v. Travelers Home & Marine Ins. Co.*, No. 15-743, 2015 WL 4633772, at *3 (W.D. Pa. Aug. 3, 2015) (Kelly, M.J.) ("[T]he absence of Pennsylvania precedent that contemplates the specific *facts* at issue here does not render Pennsylvania *law* undefined or unsettled."). Such a dispute does not involve a novel state-law issue. Furthermore, there is minimal public interest in resolving the dispute as there is no actual case or controversy present. *See infra* Part B.

The remaining factors are neutral or inapplicable. The second factor is neutral as there is no inconvenience to the parties to litigate in federal court because both the state court and this Court are located in Allegheny County. The fourth factor is neutral as the Pennsylvania Declaratory Judgment Act, 42 Pa.C.S.A. § 7541, provides the same remedies as the federal DJA. *See Allstate Fire & Casualty Ins. Co. v. Archer*, No. 1:17-cv-331, 2018 WL 2538859, at *3, fn. 1 (W.D. Pa. June 4, 2018) (Hornak, C.J., then-J.) (finding the fourth factor neutral because the parties could obtain the same declaratory relief under Pennsylvania's Declaratory Judgment Act). The seventh factor is also neutral as there is no suggestion that Allstate's choice to remove was mere procedural fencing or forum shopping. The fifth, sixth, and eighth factors are irrelevant as there

is no pending parallel litigation. *See Dayton v. Automobile Ins. Co.*, No. 3:20-1833, 2021 WL 5163221, at *3 (M.D. Pa. Nov. 5, 2021) (finding the seventh factor neutral where there was no suggestion that the defendants had an improper motive for removing the case, and the fifth, sixth, and eighth factors were inapplicable absent pending state litigation). Therefore, based on the absence of parallel state proceedings and the *Reifer* factors, the Court will exercise jurisdiction over this action and deny Plaintiffs' Motion to Remand.

**B. The Court Will Dismiss the Action for Lack of Article III Standing**

The Court now turns to Allstate's Motion to Dismiss for lack of subject-matter jurisdiction. ECF No. 7. Allstate asserts that the Samudoskys lack standing to sue because they have not alleged an injury-in-fact. ECF No. 8 at 12–14. In response, the Samudoskys state that Allstate's labeling practices will lead to confusion and a possible denial of stacked insurance benefits to them and similarly situated Pennsylvanians. ECF No. 20 at 8. The Court agrees with Allstate that the Samudoskys have failed to allege an injury-in-fact, and thus lack standing to sue.

The standing doctrine, in Article III, section 2 of the Constitution, limits the judicial power of the United States to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). Thus, federal courts may "resolve only 'a real controversy with real impacts on real persons.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Am. Legion v. Am. Humanist Assn.*, 139 S. Ct. 2067, 2103 (2019)). A "real controversy" exists where the plaintiff (1) has suffered an "injury in fact," (2) that is "fairly traceable" to the defendant's challenged conduct, and (3) is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction over the matter. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992). The party invoking the court's jurisdiction bears the burden of

establishing standing. *Spokeo*, 578 U.S. at 338. When a party challenges standing on the basis of the pleadings, courts "accept as true all material allegations in the complaint" and "construe the complaint in favor of the complaining party." *Yaw v. Delaware River Basin Commission*, 49 F.4th 302, 310 (3d Cir. 2022).

A statutory right to sue, by itself, does not satisfy Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. at 339. Therefore, cases brought under the DJA must still meet Article III standing requirements. Although declaratory judgments are "often forward-looking," they are still "limited to cases and controversies in the constitutional sense." *Sherwin-Williams Co. v. Cnty. of Delaware, Pa.*, 968 F.3d 264, 269 (3d Cir. 2020).

An injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338 (cleaned up). It is intended to distinguish those plaintiffs with a "direct stake in the outcome of a litigation" from those with only "a mere interest in the problem." *Ellison v. American Board of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021). To satisfy this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

A concrete injury is "real rather than abstract," and a particularized injury "affects the plaintiff in a personal and individual way." *Ellison*, 11 F.4th at 205. An actual injury is one that is "presently or actually occurring." *Sherwin-Williams Co.*, 968 F.3d at 269. An imminent injury must be "certainly impending" or have a "substantial risk" of occurring. *Thorne v. Pep Boys Manny Moe & Jack, Inc.*, 980 F.3d 879, 893 (3d Cir. 2020). Mere allegations of "possible future injury are insufficient." *Ellison*, 11 F.4th at 205 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Similarly, there is no "risk of harm" where an injury would occur only if a series

of highly speculative events occurred. *Thorne*, 980 F.3d at 893–94 (finding no "risk of real f harm" where the purported harm—purchasing unregistered tires—would only lead to a concrete injury if the unregistered tires were recalled, the manufacturer was unable to contact the plaintiff regarding the recall, the plaintiff continued to drive with the recalled tires, and the defective tires caused an accident).

Here, the Samudoskys have not suffered a concrete injury. They have not claimed UM/UIM insurance benefits, nor have they been denied such benefits. *See generally* ECF No. 1-2. The Samudoskys' purported injury is also neither "impending" nor "imminent." Allstate's labeling practices will harm the Samudoskys only if a series of highly speculative events occur: the Samudoskys must be in a car accident, in which an uninsured or underinsured motorist is at fault, they must claim stacked UM/UIM benefits, and Allstate must deny those benefits. Allstate's written assurance that the Samudoskys are entitled to inter-policy stacking makes the likelihood of these events occurring even more remote. ECF No. 1-2 at 50. Absent a concrete injury, the Samudoskys do not have a "direct stake in the outcome," and are instead "mere[ly] interest[ed]" in Allstate's labeling practices. Therefore, the Samudoskys have not suffered an injury-in-fact, and this action presents no case or controversy for this Court to decide. Accordingly, the Court will dismiss for lack of standing.

## IV. Conclusion

For the foregoing reasons, it is **HEREBY ORDERED** that Plaintiffs' Motion to Remand is **DENIED** and Defendants' Motion to Dismiss without prejudice pursuant to Fed. R. Civ. P. 12(b)(1) is **GRANTED**.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record